26933. GRAHL v. McMATH et al.

' DECIDED NOVEMBER 30, 1938. REHEARING DENIED DECEMBER 17, 1938.

*Hollis Fort Jr., Jule Felton*, for plaintiff.

*Dykes & Dykes, R. L. Maynard, James A. Fort*, for defendants.

GUERRY, J.   J. S. Grahl, by next friend, brought suit against J. B. Dorsey and H. E. McMath by reason of injuries sustained in an automobile accident.   At the conclusion of the evidence the court directed a verdict for the defendants.

The evidence for the plaintiff disclosed that plaintiff on the night of the injury was riding in an automobile belonging to the defendant J. B. Dorsey, which was being driven at the time by defendant's son, Fred Dorsey, who was then twenty-three years old.   Fred Dorsey lived and worked in Danville, Virginia, but was home on a visit during the Christmas holidays.   The evidence was sufficient to authorize the jury to find, if they saw fit, that Fred Dorsey was guilty of gross negligence in the operation of the car at the time of the injury to the plaintiff, and that his negligence was the proximate cause of the injury.   It appears from the evidence that plaintiff had been riding around in the car with Fred Dorsey during the day, and that he had ridden with Fred Dorsey in the same car quite a number of times before.   Fred Dorsey was carrying plaintiff to find his (plaintiff's) brother, but they had been unable to locate him.   He testified that the mission on which they were going was a joint mission, for the joint benefit of both boys.   The defendant J. B. Dorsey testified: "I have an automobile.   That automobile is for the use of myself and I use it for business, use it when I go off on a trip.   My wife uses it.   I did not give my son permission to use it at that time.   Relative to whether I have ever given him permission since he left home to use the car, he goes and gets the car, and gets it because he won't have it long.   The custom was, he would ask me for the car.   He did not ask me in this case."   Fred Dorsey testified in regard to his control of the car he was driving: "I am twenty-three years old.   My residence is in Virginia.   I have lived there for a year and a half.   I came home Christmas day.   I did not ask my father for his automobile.   I drove it when nobody else was using it.   I would say I drove it three or four times during the Christmas holidays prior to the injury.   I did not have to ask him.   Relative to whether he accorded the use of that automobile to every member of his family that could use it, not exactly that, he excluded from using it my brother who is twelve years old."

The evidence as to the defendant McMath was that the car driven by Dorsey, in which plaintiff was riding, while traveling at a speed

of from sixty to eighty miles an hour, struck the car of H. E. McMath at a road intersection while it was being driven by Riley, the fifteen-year-old son of McMath. There was some evidence which might lead the jury to infer that Riley McMath was not in the exercise of ordinary care at the time the car in which he was riding was struck. The undisputed evidence disclosed that H. E. McMath owned two cars, one of which was used by the family and that the car in the wreck was used in the conduct of his business. "I do not let my family use it at any time they want to for their own comfort, pleasure, or satisfaction, no member of my family, wife or sons, ever have the right to use that car without first getting my permission. Members of my family never use that car on any particular occasion without asking my permission to use it on that occasion. Riley never used that car, he has never used it without my permission since I owned it." H. E. McMath Jr., the twenty-year-old son of the defendant, testified that on the night of the accident his father had given him special permission to use that particular car. "He would not let Riley have it; he refused to let Riley have it. I heard my father refuse to let him have it." At the dance, H. E. McMath Jr., allowed Riley to use the car. "I think I voluntarily let him have it; but I knew it was against my father's consent and permission." Riley McMath testified that his father refused to allow him to drive the car that night, that he had never been accustomed to drive it, and that no member of the family ever drove that particular car without the express consent of the defendant, and that he persuaded his brother to let him have the car although they both knew their father had refused his permission.

■ In directing a verdict in favor of the defendant Dorsey we think the court erred. Counsel for Dorsey say in their brief that the principal question to be decided is "whether the family-car doctrine applies," and contend that the evidence showed that Fred Dorsey merely borrowed his father's car on the occasion in question. In *Hubert* v. *Harpe,* 181 *Ga.* 168 (182 S. E. 167), the court quoted from *Griffin* v. *Russell,* 144 *Ga.* 275 (87 S. E. 10, L. R. A. 1916F, 216, Ann. Cas, 1917B, 994), as follows: "'If a father or mother, owning an automobile, and keeping it to be used for the comfort and pleasure of the family, should authorize a son to drive it for the comfort or pleasure of the family, this would make

the owner liable for the negligence of the son operating the machine for such purpose.'" In the *Hubert* case, supra, the following ruling was made: "A father is under no legal obligation to furnish an automobile for the comfort and pleasure of his child, whether minor or adult; and if he does so, it is a voluntary act on his part. In every such case the question is whether the father has expressly or impliedly made the furnishing of an automobile for such purpose a part of his business, so that one operating the vehicle for that purpose with his consent, express or implied, may be considered as his agent or servant." If, at the time of the injury to the plaintiff, Fred Dorsey was driving the car in question with the express or impled permission of the father, for his own recreation and pleasure, within the general purpose for which the car was kept, liability exists. We think the evidence as developed was sufficient to carry this issue as well as the issue of gross negligence to the jury,

■ In directing a verdict for the defendant McMath, we think the court was correct. Plaintiff in error contends in respect to McMath: "If an injury occurs by negligent use of an automobile the driver is presumed to be representing the owner and the burden is upon the owner to show non-liability." The case of *Ficklen* v. *Heichelheim,* 49 *Ga. App.* 777 (176 S. E. 540), is cited in support of this contention. The first sentence in the fifth headnote in said case may seem to support this contention. It is apparent from a reading of the entire headnote that this is true only when it also appears that the car "is openly and habitually used by a minor child as a member of the family." The uncontradicted evidence in this case is that McMath had refused to allow this son under sixteen years of age to drive the car. It may be a question whether under the evidence it could be determined that this car came under the family-car doctrine; even so, it is certain that the father denied to the driver of the car the right to use it. It will not be presumed that the father gave his consent to a violation of the law without some evidence to that effect.

Under the above rulings the court erred in directing a verdict against the plaintiff and in favor of the defendant Dorsey, but was correct in directing a verdict in favor of McMath.

*Judgment affirmed in part; and reversed in part. Broyles, C. J., and MacIntyre, J., concur.*

## ON MOTION FOR REHEARING.

Counsel for the defendant Dorsey contends that the decision in *Hubert* v. *Harpe,* supra, is not a precedent and is not controlling authority in this case for the reason that it was there held that a father who kept and maintained a car for the pleasure and convenience of his family was liable for the negligent operation of such car by a non-dependent, self-supporting, adult son, who resided in his home without charge, when, as a matter of custom, he voluntarily permitted such son to use the car, while in the present case it merely appears that the son was visiting in the father's home for the Christmas holidays and was not residing there. We can not see that it is material whether the adult, non-dependent, self-supporting son lives twelve months in the home or is merely living there while on a visit to his father. We feel that we are bound by the *Hubert* case. In *Griffin* v. *Russell,* 144 *Ga.* 275 (supra), it was held: "If a father or mother, owning an automobile, and keeping it to be used for the comfort and pleasure of the family, should authorize a son to drive it for the comfort or pleasure of the family, this would make the owner liable for the negligence of the son operating the machine for such purpose." The use of the car for the comfort and pleasure of the family made such use "her business or affair within the meaning of the rule of law discussed above." *Griffin* v. *Russell,* supra. It will be noted that Justice Evans did not concur in this principle, and that under the facts in that case a minor son was operating the car. In *Bryant* v. *Keen,* 43 *Ga. App.* 251 (158 S. E. 445), the family-car doctrine was restricted so as to exclude a son-in-law from its operation. In *Kennedy* v. *Manis,* 46 *Ga. App.* 808 (169 S. E. 319), this doctrine was held to include an adult daughter living with the parents as a member of the family. While the *Hubert* case, supra, although rendered by a divided court, stands unreversed, this court is bound thereby. We think that an unmarried son on a visit to his family becomes a member thereof. If this car was furnished him by his father, as a family car, for the comfort and pleasure of the family, this son was the father's agent and as such the father became responsible for his acts. If the father did not so furnish the car no liability would exist.　　　　　　　　　　*Rehearing denied.*